# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

**FILED**
**Dana Wilson, Clerk**
**United States Bankruptcy Court**
**Savannah, Georgia**
*8:53 am, Mar 12 2026*

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| REBEKAH ANDERSON CRUZ and | ) | |
| DANIEL CRUZ, | ) | |
| | ) | Number <u>25-40375-EJC</u> |
| *Debtors.* | ) | |
| | ) | |
| TRUSTEES OF THE NATIONAL | ) | |
| ELEVATOR INDUSTRY PENSION | ) | |
| FUND, et al. | ) | |
| | ) | |
| *Plaintiffs,* | ) | Adversary Proceeding |
| | ) | |
| v. | ) | Number <u>25-04007-EJC</u> |
| | ) | |
| REBEKAH ANDERSON CRUZ and | ) | |
| DANIEL CRUZ, | ) | |
| | ) | |
| *Defendants.* | ) | |

## OPINION ON MOTION TO DISMISS

Before the Court is the Motion to Dismiss and Memorandum of Law (the "Motion to Dismiss") filed by Rebekah Anderson Cruz and Daniel Cruz, the Defendants in this adversary proceeding and the Debtors in the underlying Chapter 7 bankruptcy case. (Adv. Dckt. 14). The Plaintiffs are the Trustees (the "Trustees")

1

of the National Elevator Industry Pension Fund, the National Elevator Industry Health Benefit Plan, the National Elevator Industry Education Plan, the Elevator Constructors Annuity and 401(k) Retirement Fund, and the Elevator Industry Work Preservation Fund (the "Benefit Plans"). The Trustees allege that the Debtors, who owned an elevator company, failed to make contributions to their employees' Benefit Plans, as required by a collective bargaining agreement, for the period March 2021 through July 2021. In November 2021, the parties entered into a settlement agreement in which the Debtors acknowledged their liability for the company's failure to remit funds as required. Now, the Debtors having filed for Chapter 7 bankruptcy, the Trustees contend that the Debtors' failure to remit the funds constitutes fiduciary defalcation under 11 U.S.C. § 523(a)(4), thus rendering that debt nondischargeable. For their part, the Debtors ask the Court to dismiss the complaint for failure to state a claim. For the reasons set forth below, the Court will deny the Debtors' Motion to Dismiss.

## I. **Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I). The Court makes the following findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

2

Rules"), which makes applicable Rule 52 of the Federal Rules of Civil Procedure (the "Federal Rules").

## II. <u>Findings of Fact</u>

Generally, when reviewing a motion to dismiss, a court may consider only the factual allegations and legal claims within the four corners of the complaint. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'"); *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) ("The scope of the review must be limited to the four corners of the complaint."). But that general rule has two exceptions relevant here.

First, the Court takes judicial notice of its own docket under Rule 201(b) of the Federal Rules of Evidence,[1] made applicable in bankruptcy cases by Bankruptcy Rule 9017. Rule 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). Under Rule 201(b), a court may take judicial notice of its own docket as a source

---

[1] Federal Rule of Evidence 201(b) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b).

whose accuracy cannot reasonably be questioned. *See U.S. v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."). *See also Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1273 (11th Cir. 2014) ("Under Rule 201 of the Federal Rules of Evidence, a court 'may take judicial notice on its own'" at any stage of a proceeding).

Second, "when resolving a motion to dismiss . . . a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). *See also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) ("Our Rule 12(b)(6) decisions have adopted the 'incorporation by reference' doctrine[.]"). Here, as will be discussed, the parties stipulated to the Court's consideration of two exhibits admitted at the October 9, 2025 hearing as if they had been attached to the Trustees' complaint. (Adv. Dckt. 32). The parties agree that those exhibits are both authentic and central to the Trustees' claims.

A. Bankruptcy Court Proceedings

On May 1, 2025, the Debtors filed a Chapter 7 petition. (Dckt. 1). In their Schedule A/B, they disclosed their 100% ownership of a business known as Miles Elevator Door & Cab Inc. ("Miles Elevator"), which they valued at zero dollars,

4

adding a notation that the business is "fully closed and non-operational."[2] (Dckt. 1, p. 12, ¶ 19). In their Schedule D, they listed the National Elevator Industry Pension Fund as a secured creditor with a claim of $31,657.89 secured by "any and all property subject to judgment lien interest held by National Elevator Industry Pension Fund (Civil Action No. 23-2003 – U.S. District Court, Eastern District of Pennsylvania)." (Dckt. 1, p. 25, ¶ 2.2). The Debtors' bankruptcy case was a no-asset case, as evidenced by the Chapter 7 Trustee's June 5, 2025 Report of No Distribution. They received their discharge on January 7, 2026.[3] (Dckt. 30).

Before the Debtors received their discharge, the Trustees filed on May 22, 2025, a complaint commencing this adversary proceeding seeking to have the Debtors' debt to them declared nondischargeable under § 523(a)(4), alleging that the Debtors "misappropriated" and "defalcated" funds. (Adv. Dckt. 1, pp. 6–7, ¶¶ 27–28). The Clerk entered a deficiency requiring the Trustees to file a Local Rule 7.1.1 disclosure statement identifying the plaintiffs and their officers. (Adv. Dckt. 2). The Trustees did so. (Adv. Dckt. 3). Then, on June 2, 2025, the Clerk issued a summons. (Adv. Dckt. 5). The next day, June 3, 2025, the Trustees filed a certificate of service

---

[2] In their Statement of Financial Affairs, they disclosed that Miles Elevator filed and concluded its own bankruptcy case in the Middle District of Tennessee. (Dckt. 1, p. 72, ¶ 9). That was a Chapter 7 case, No. 3:23-bk-02078, assigned to Judge Mashburn.

[3] The discharge does not automatically cover the debt that is the subject of this adversary proceeding under § 523(a). The Order of Discharge states that "[s]ome debts are not discharged," and that "[e]xamples of debts that are not discharged are . . . debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case[.]" (Dckt. 30, p. 2).

reflecting service by U.S. Mail on the Debtors at their residence and on Debtors' counsel at 24 Drayton Street, Suite 204, Savannah, Georgia 31401. (Adv. Dckt. 6, amended at Adv. Dckt. 13).

On June 23, 2025, the Debtors moved to dismiss the adversary proceeding. (Adv. Dckt. 14). They argued that the complaint should be dismissed for two reasons: (1) insufficient service of process under Federal Rule 12(b)(5) and Bankruptcy Rule 7004(g), because the Trustees failed to serve Debtors' counsel at the correct address; and (2) failure to state a claim under Federal Rule 12(b)(6), because the Trustees failed to sufficiently plead the elements of fraud under either the "short and plain statement" pleading standard of Federal Rule 8(a)(2) or the heightened pleading standard of Federal Rule 9(b).[4] The Debtors cited Georgia case law for the elements of fraud under § 523(a)(4), arguing that the Trustees failed to plead those elements. (Adv. Dckt. 14, pp. 3–4). And they argued that the November

---

[4] Also, the Debtors objected to the Trustees' citation of 11 U.S.C. § 1328(a)(2) in their complaint. That Bankruptcy Code section provides that "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt . . . of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)[.]" 11 U.S.C. § 1328(a)(2). The Trustees cite it under their sole count, for nondischargeability under § 523(a)(4). (Adv. Dckt. 1. P. 6, ¶ 22). In the Motion to Dismiss, the Debtors point out, correctly, that this is a Chapter 7 case, not a Chapter 13 case, so "any reference to Section 1328 is misguided and without application." (Adv. Dckt. 14, p. 3). But the Court sees no need to strike that language from the complaint, or to dismiss any claim under § 1328, as the Debtors request. The Court interprets the complaint as setting forth a single claim under § 523(a)(4).

23, 2021 Settlement Agreement, which made no reference to fraud, precludes the Trustees from establishing fraud in this adversary proceeding. (Adv. Dckt. 14, p. 6).

In response to the Debtors' service argument, the Trustees requested that the Clerk reissue the summons. (Adv. Dckt. 17). On July 1, 2025, the Clerk reissued the summons. (Adv. Dckt. 18). The next day, July 2, 2025, the Trustees filed a certificate of service reflecting service on Debtors' counsel at P.O. Box 8473, Savannah, Georgia 31412. (Adv. Dckt. 19). On July 7, 2025, the Trustees filed a response in opposition to the Debtors' Motion to Dismiss. (Adv. Dckt. 25). There, they argued that the Debtors' Federal Rule 12(b)(5) defense based on insufficient service was mooted when the Trustees mailed the reissued summons to Debtors' counsel's P.O. Box. And they argued that the allegations in the complaint suffice to state a § 523(a)(4) claim under *both* the Federal Rule 8(a)(2) and Federal Rule 9(b) pleading standards.

The Debtors' Motion to Dismiss was initially set for hearing on July 9, 2025 (adv. dckt. 15), but at the parties' request (adv. dckt. 24, 26) was continued to October 9, 2025. (Adv. Dckt. 27). At that hearing, both Debtors' counsel and counsel for the Trustees stipulated to the Court's consideration of two exhibits: (1) the May 25, 2023 Complaint in Confession of Judgment filed in the United States District Court for the Eastern District of Pennsylvania, Case No. 2:23-cv-02003-MSG, which incorporates the parties' November 23, 2021 Settlement Agreement, Release,

and Confession of Judgment; and (2) the September 19, 2023 Judgment by Confession in that same case. (Adv. Dckt. 32). Counsel agreed that both exhibits are central to the complaint and therefore can be deemed part of the complaint in ruling on the Motion to Dismiss. (10/9/2025 Hearing, 11:55–11:58 a.m.).

Further, Debtors' counsel agreed that any deficiencies with the initial service of process were cured through service of the reissued summons. (10/9/2025 Hearing, 12:03 p.m.). That left failure to state a claim under Federal Rule 12(b)(6) as the Debtors' sole basis for seeking dismissal. As in the Motion to Dismiss, Debtors' counsel argued that the Trustees failed to plead a prima facie case of fraud under § 523(a)(4) (10/9/2025 Hearing, 12:21–12:22 p.m.). But the Trustees' counsel made clear that they based their § 523(a)(4) claim on defalcation, not fraud. (10/9/2025 Hearing, 12:47–12:48 p.m.). After hearing argument from the parties on the Debtors' failure-to-state-a-claim defense, the Court took the matter under advisement. (10/9/2025 Hearing, 1:06 p.m.). The Court invited the parties to file supplemental briefs, but only the Trustees did so. (Adv. Dckt. 33).

B. The Trustees' Allegations

In the complaint, the Trustees make the following allegations of fact: The Debtors "were the owners of the now-defunct corporation" known as Miles Elevator, which was "signatory to a collective bargaining agreement with the International Union of Elevator Constructors, AFL-CIO" requiring it to "make contributions to

8

the Benefit Plans based on hours worked by its employees performing work covered by the collective bargaining agreement." (Adv. Dckt. 1, p. 4, ¶¶ 13–14). Under the collective bargaining agreement's terms, the Trustees allege, "[t]itle to all the monies paid into and/or due and owing to the [Benefit Plans]" would "vest in and remain exclusively in the Trustees of said [Benefit Plans], respectively." (Adv. Dckt. 1, p. 4, ¶ 15).

According to the Trustees, "Miles Elevator and the Debtors failed to satisfy their contribution payment obligations to the Benefit Plans." (Adv. Dckt. 1, p. 4, ¶ 16). "On November 23, 2021," the Trustees allege, "Miles Elevator and the Debtors entered into a Settlement Agreement and Confession of Judgment to resolve the contribution delinquency to the Benefit Plans." (Adv. Dckt. 1, p. 4, ¶ 16). In that Settlement Agreement, per the Trustees, the Debtors "acknowledged their status as fiduciaries regarding plan assets" under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and acknowledged that they "exercise[d] discretionary authority and/or discretionary control respecting management of any plan assets, the contributions due and owing to the [Benefit Plans] that are part of [the] Settlement Agreement as well as any contributions that become due and owing subsequent to the execution of [the] Agreement." (Adv. Dckt. 1, pp. 4–5, ¶ 17).

A copy of the Settlement Agreement was admitted into the record as part of Exhibit "1" at the October 9, 2025 hearing in this adversary proceeding, and the

9

Court will consider that document as part of the Trustees' complaint for Federal Rule 12(b)(6) purposes. (Adv. Dckt. 32). It reflects that Miles Elevator "acknowledge[d] that it owe[d] the Benefit Funds the amount of $60,700.81 for delinquent contributions, interest, and liquidated damages for the reporting periods of March 2021 through July 2021." (Ex. "1," p. 31, ¶ 2). To resolve that debt, Miles Elevator agreed to pay the Trustees the sum of $50,681.30. (Ex. "1," p. 32, ¶ 3). In addition to acknowledging their discretionary authority and fiduciary status, both Debtors acknowledged their personal liability for "the amounts due and owing to the Benefit Funds that are part of [the] Settlement Agreement." (Ex. "1," p. 35, ¶¶ 16–17).

The Debtors and Miles Elevator, according to the Trustees, "breached the terms of the Settlement Agreement." (Adv. Dckt. 1, p. 5, ¶ 18). In response, the Trustees allege, they filed on May 25, 2023, a Complaint in Confession of Judgment in the United States District Court for the Eastern District of Pennsylvania, commencing Case No. 2:23-cv-02003-MSG. (Adv. Dckt. 1, p. 5, ¶ 18). On September 19, 2023, U.S. District Judge Mitchell S. Goldberg issued in that case a Judgment by Confession against Miles Elevator and the Debtors "jointly and severally, in the amount of $31,657.89, with post-judgment interest to accrue at the statutory rate." (Adv. Dckt. 1, p. 5, ¶ 18). A copy of the Judgment by Confession was admitted into the record as Exhibit "2" at the October 9, 2025 hearing in this adversary proceeding, and the Court will likewise consider that document for

10

Federal Rule 12(b)(6) purposes. (Adv. Dckt. 32). According to the Trustees, "[t]he Debtors have not satisfied the judgment amount." (Adv. Dckt. 1, p. 6, ¶ 20).

## III. <u>Conclusions of Law</u>

Section 523(a)(4) of the Bankruptcy Code provides that "[a] discharge under section 727, 1141, 11921 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). In other words, it "provides four separate grounds for holding a debt nondischargeable: fiduciary fraud, fiduciary defalcation, embezzlement, and larceny." *State of Illinois, Department of Lottery v. Marchiando (In re Marchiando)*, 138 B.R. 548, 552 n.7 (Bankr. N.D. Ill. 1992). The Trustees do not allege embezzlement or larceny. And, apart from a single quotation of § 523(a)(4), nowhere in the complaint do they use the word "fraud." (Adv. Dckt. 1, p. 6, ¶ 23). Instead, they claim that the Debtors "misappropriated" and "defalcated" assets belonging to the Benefit Plans. (Adv. Dckt. 1, pp. 6–7, ¶¶ 27–28). And at the October 9, 2025 hearing, the Trustees' counsel stated that "this is clearly a case about defalcation." (10/9/2025 Hearing, 12:47–12:48 p.m.). The Court therefore interprets the complaint as raising a claim of fiduciary defalcation under § 523(a)(4).

To determine whether the complaint states a claim for fiduciary defalcation, therefore, the Court must determine whether the Trustees have adequately pled that

11

the Debtors were fiduciaries and whether they have adequately pled defalcation. Additionally, the Debtors argue in their Motion to Dismiss that the Trustees' claim must meet the heightened pleading standard of Federal Rule 9(b) rather than the "short and plain statement" standard of Federal Rule 8(a)(2), and that the intervening Settlement Agreement's merger clause precludes the Trustees from establishing any pre-settlement defalcation. The Court will address each of those four issues.

A. Applicable Pleading Standard

The Debtors seek to dismiss the complaint for failure to state a claim under Federal Rule 12(b)(6), made applicable here by Bankruptcy Rule 7012(b). Federal Rule 8(a)(2), made applicable by Bankruptcy Rule 7008, requires that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). As the Supreme Court has explained, the purpose of this requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

According to the Debtors, however, the Trustees must meet the heightened pleading standard of Federal Rule 9(b), made applicable by Bankruptcy Rule 7009, which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake[.]" Fed. R. Civ. P. 9(b).

12

The Debtors appear to base that argument on their assumption that the Trustees are pursuing a claim for fiduciary fraud under § 523(a)(4). (Adv. Dckt. 14, p. 5) (arguing that the Trustees have "failed to comply with the pleading standards of Rule 7008 or Rule 7009 by failing to put forward plausible, specific facts in support of [their] claim of fraud."). But the Trustees are claiming fiduciary defalcation, not fraud.

Must a claim for defalcation meet the heightened standard of Federal Rule 9(b)? Courts disagree on that point. For example, in *Prod. Credit Ass'n of S. N.M. v. Tres Rios Cattle Co., LLC (In re Gomez-Torres)*, Case No.: 21-50051-RLJ-7, Adversary No. 21-05014, 2022 WL 2355420, (Bankr. N.D. Tex. June 28, 2022) (quoting *Chowdary v. Ozcelebi (In re Ozcelebi)*, 635 B.R. 467, 477 (Bankr. S.D. Tex. 2021)), the court stated that "[f]raud theories under § 523(a)(4) are subject to the heightened pleading standard of Rule 9(b) while defalcation, embezzlement, and larceny theories must meet Rule 8(a)(2)." *Gomez-Torres*, 2022 WL 2355420, at *5. But in *Barrett v. Storm (Matter of Storm)*, Bankruptcy Case No. 23-55028 LRC, Adversary Proceeding No. 23-05167-LRC, 2024 WL 1313958, at *2 (Bankr. N.D. Ga. March 27, 2024) (Craig, J.) (quoting *Young v. Wells-Lucas (In re Wells-Lucas)*, Case No. 20-68333-JWC, Adversary Proceeding No. 20-06196-JWC, 2021 WL 1234454, at *2 (Bankr. N.D. Ga. March 31, 2021) (Cavender, J.)), the court stated that "the claims of fraud or defalcation while acting as a fiduciary under § 523(a)(4) are governed by the heightened pleading standards of Rule 9, while Plaintiff's claims

for . . . embezzlement under § 523(a)(4) and the claims under § 523(a)(6) are governed by Rule 8." *Storm*, 2024 WL 1313958, at *2.[5]

None of the reported decisions on that issue contain much analysis. But, as discussed below, the Supreme Court explained in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013), that defalcation, though similar to fraud, is not *identical* to it. *Bullock*, 569 U.S. at 275 (noting that fraud "typically requires a false statement or omission," whereas defalcation "can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity"). For that reason, the Court finds that a § 523(a)(4) defalcation claim need not meet the heightened standard of Federal Rule 9(b). The applicable pleading standard is that under Federal Rule 8(a)(2).

B. Legal Standard for Motion to Dismiss

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked

---

[5] *See also Moodie v. Olson (In re Olson)*, Case No. 25-21293-gmh, Adv. Proc. No. 25-02090-gmh, 2026 WL 120306, at *3 (Bankr. E.D. Wis. Jan. 15, 2026) ("Rule 9's heightened pleading requirement does not apply" to § 523(a)(4) defalcation claim.).

assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under Federal Rule 12(b)(6), a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). When ruling on a 12(b)(6) motion, the court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1251 (11th Cir. 2021) (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016)). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). To apply this standard, the court must disregard any conclusory allegations, then "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to

relief.'" *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 679).

C. <u>Fiduciary Relationship</u>

The Debtors do not dispute that the Trustees have adequately pled a fiduciary relationship under § 523(a)(4), but the Court will nevertheless address that issue to determine whether the Trustees have stated a claim for fiduciary defalcation. In *Spring Valley Produce, Inc. v. Forrest (In re Forrest)*, 47 F.4th 1229 (11th Cir. 2022), the Eleventh Circuit addressed the scope of the term "fiduciary capacity" under § 523(a)(4), stating as follows:

> [W]e adopt the following three-part test for determining whether a debtor is acting in a "fiduciary capacity" under § 523(a)(4) in relation to a creditor. First, the relationship must have (1) a trustee, who holds (2) an identifiable trust res, for the benefit of (3) an identifiable beneficiary or beneficiaries. Second, the relationship must define sufficient trust-like duties imposed on the trustee with respect to the trust res and beneficiaries to create a "technical" trust, with the strongest indicia of a technical trust being the duty to segregate trust assets and the duty to refrain from using trust assets for a non-trust purpose. Third, the debtor must be acting in a fiduciary capacity before the act of fraud or defalcation creating the debt.

*Forrest*, 47 F.4th at 1234. Here, the Trustees argue that the Debtors were fiduciaries as to the Benefit Plans under ERISA. Specifically, under 29 U.S.C. § 1002(21)(A)(i), "a person is a fiduciary with respect to [an employee welfare benefit plan] to the extent" the person, among other things, "exercises any discretionary authority or

16

discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" 29 U.S.C. § 1002(21)(A)(i). *See also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan.").

Courts disagree as to "whether an ERISA fiduciary *per se* satisfies the fiduciary standard under § 523(a)(4)[.]" *Trs. of the Sheet Metal Workers' Nat'l Pension Fund v. Kakareko (In re Kakareko)*, 575 B.R. 12, 22–26 (Bankr. E.D.N.Y. 2017) (citing cases and adopting the *per se* view). *See also Sheet Metal Workers' Nat'l Pension Fund v. Rusi (In re Rusi)*, 674 B.R. 708, 723 n. 5 (Bankr. E.D.N.Y. 2025) (citing cases and holding that "a debtor that is a fiduciary under ERISA . . . is a fiduciary for purposes of 523(a)(4)"); *Sheet Metal Workers' Nat'l Pension Fund v. Kern (In re Kern)*, 542 B.R. 87, 96–98 (Bankr. E.D.N.Y. 2015) ("Because ERISA is a federal law and fiduciary status and defalcation under the Bankruptcy Code are also determinations made under federal law, this Court finds no compelling reason to hold that an ERISA fiduciary is not a *per se* fiduciary for § 523(a)(4) purposes.").

The Sixth Circuit and Eighth Circuit have rejected the proposition that an ERISA fiduciary *per se* satisfies the § 523(a)(4) fiduciary requirement. *See Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 641–42 (6th Cir. 2007) ("being an ERISA fiduciary is not itself sufficient to satisfy

the fiduciary capacity element" because § 523(a)(4) "requires more than an employer's contractual duty to contribute to benefit funds"); *Hunter v. Philpott*, 373 F.3d 873, 875 (8th Cir. 2004) ("We are not satisfied that the simple determination than an individual is an ERISA fiduciary is enough to satisfy the requirements of § 523(a)(4)[.]").

In contrast, the Ninth Circuit and the First Circuit Bankruptcy Appellate Panel have found that ERISA fiduciary status *per se* suffices for purposes of § 523(a)(4). *See Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir. 2001) ("ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a fiduciary under § 523(a)(4)" because ERISA duties "arise upon creation of an ERISA plan and predate the creation of any debt to the plan participant creditor"); *Raso v. Fahey (In re Fahey)*, 482 B.R. 678, 692 (B.A.P. 1st Cir. 2012) (finding debtor that satisfied ERISA definition of fiduciary was fiduciary under § 523(a)(4)).

The Eleventh Circuit has yet to address whether an ERISA fiduciary *per se* satisfies the § 523(a)(4) fiduciary requirement. *Thrower v. Godwin (In re Godwin)*, Case No. 8:20-bk-04446-CPM, Adv. No. 8:20-ap-00418-CPM, 2025 WL 2937341, at *4 (Bankr. M.D. Fla. Oct. 14, 2025) (noting that "the Eleventh Circuit ha[s] yet to apply the ERISA-deemed fiduciary to the capacity of a fiduciary under § 523(a)(4)"). *Forrest*, where the Eleventh Circuit set forth the fiduciary capacity test under § 523(a)(4), arose under the Perishable Agricultural Commodities Act

18

("PACA"), not ERISA. *Forrest*, 47 F.4th at 1234. In a 1999 decision, Judge Davis found that "[t]o the extent [the debtor] withheld money from employee paychecks and did not remit those contributions to the [f]unds . . . he breached his fiduciary duty under ERISA" for purposes of § 523(a)(4). *Cochran v. Coleman (In re Coleman)*, 231 B.R. 393, 396 (Bankr. S.D. Ga. 1999) (Davis, J.). But in a 2011 decision, Judge Barrett, citing the Sixth Circuit's *Bucci* decision, found after a trial that the debtor, who owned a medical services company, was not acting as an ERISA fiduciary when he failed to contribute to an employee profit-sharing plan, and that his failure to do so was merely a contractual violation. *Adams v. Volpitto (In re Volpitto)*, 455 B.R. 273, 291–92 (Bankr. S.D. Ga. 2011) (Barrett, C.J.).

On balance, the Court agrees with the district court's analysis in *Thrower v. Godwin (In re Godwin)*, 651 B.R. 392 (M.D. Fla. 2023) that "an ERISA-deemed fiduciary narrowly passes the test" for fiduciary capacity set forth by the Eleventh Circuit in *Forrest*, because (1) the ERISA fiduciary is an identifiable trustee, the beneficiaries are the employees who benefit from the funds, and the res is the unpaid contributions; (2) ERISA imposes trust-like duties, including the duty to use assets only for trust purposes; and (3) the fiduciary exercises control over the funds at the moment they become due. *Godwin*, 651 B.R. at 397–98.

Here, consistent with the Trustees' allegations in the complaint (adv. dckt. 1, pp. 4–5, ¶ 17), the Debtors acknowledged in the Settlement Agreement that they

"exercise[d] discretionary authority and discretionary control with respect to the management of the Benefit Funds' 'plan assets'"; that each was a "'fiduciary' with respect to the Benefit Funds' 'plan assets' under [ERISA]"; and that each was "personally liable for the amounts due and owing to the Benefit Funds" under the Settlement Agreement. (Ex. "1," p. 35, ¶¶ 16–17). Debtors' counsel acknowledged as much as the October 9, 2025 hearing on the Motion to Dismiss. (10/9/2025 Hearing, 12:12–12:13 p.m.). The Court therefore finds that, for purposes of resolving the Debtors' Motion to Dismiss, the Trustees have adequately pled that the Debtors were fiduciaries under ERISA and that their ERISA fiduciary status suffices to establish § 523(a)(4) fiduciary capacity under the test set forth by the Eleventh Circuit in *Forrest*.

D. Defalcation

Just as the Debtors do not dispute that they were fiduciaries under § 523(a)(4), they do not appear to challenge the Trustees' defalcation theory. Instead, in their Motion to Dismiss, they focus on fraud. They argue that the Trustees must plead the elements of fraud under Georgia law. (Adv. Dckt. 14, pp. 3–4). They fault the Trustees for making "no factual allegations of fraud or the very specific elements amounting to fraud[.]" (Adv. Dckt. 14, p. 4). And, as mentioned, they insist that the Trustees' "claim of fraud" meet the heightened pleading standard of Federal Rule

9(b). But, as the Court has already explained, the Trustees are claiming defalcation under § 523(a)(4), not fraud.

Defalcation, the Eleventh Circuit has observed, is "a word that only lawyers and judges could love." *Forrest*, 47 F.4th at 1235 (quoting *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016)). In *Quaif v. Johnson*, 4 F.3d 950 (11th Cir. 1993), the Eleventh Circuit explained that defalcation "refers to a failure to produce funds entrusted to a fiduciary" but added that its "precise meaning . . . has never been entirely clear." *Quaif*, 4 F.3d at 955. The Supreme Court attempted to clarify the term's meaning in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). There, the Supreme Court noted that "legal authorities have disagreed about its meaning almost ever since" Congress "first included the term . . . as an exception to discharge in a federal bankruptcy statute in 1867." *Bullock*, 569 U.S. at 271. Assuming, without deciding, that defalcation "is broad enough to cover" a trustee's failure "to make a trust more than whole," the Supreme Court focused on the term's state-of-mind requirement. *Id.* at 273.

Based partly on its precedent *Neal v. Clark*, 95 U.S. 704 (1877), the Supreme Court expounded the following standard for defalcation:

> [W]here the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless

21

> conduct of the kind set forth in the Model Penal Code.
> Where actual knowledge of wrongdoing is lacking, we
> consider conduct as equivalent if the fiduciary
> "consciously disregards" (or is willfully blind to) "a
> substantial and unjustifiable risk" that his conduct will
> turn out to violate a fiduciary duty. That risk "must be of
> such a nature and degree that, considering the nature and
> purpose of the actor's conduct and the circumstances
> known to him, its disregard involves a gross deviation
> from the standard of conduct that a law-abiding person
> would observe in the actor's situation."

*Id.* at 273–74 (citation modified). This standard, the Supreme Court explained, also

follows from applying the canon *noscitur a sociis*: defalcations "linguistic

neighbors" in § 523(a)(4), fraud, embezzlement, and larceny, all require "a showing

of wrongful intent." *Id.* at 274.

At the same time, the Supreme Court emphasized that defalcation is *not*

"identical to its statutory neighbors." *Id.* at 275. That's because embezzlement

requires conversion, larceny requires taking and carrying away another's property,

and fraud usually requires a false statement or omission. But defalcation "as

commonly used (hence as Congress might have understood it), can encompass a

breach of fiduciary obligation that involves neither conversion, nor taking and

carrying away another's property, nor falsity." *Id.* And, importantly, "'defalcation,'

unlike 'fraud,' may be used to refer to *nonfraudulent* breaches of fiduciary duty." *Id.*

(emphasis in original).

22

Applying this standard, several courts have held that "a debtor's knowing failure to remit plan contributions deducted from employee paychecks is a defalcation" under § 523(a)(4). *Bd. of Trs. of the Sheet Metal Workers Int'l Ass'n Loc. Union No. 28 Tr. Funds v. Kern (In re Kern)*, 567 B.R. 17, 34 (Bankr. E.D.N.Y. 2017). *See also Trs. of the Iron Workers Dist. Council of New England Pension, Health and Welfare, Annuity, Vacation, and Educ. Funds v. Mayo (In re Mayo)*, Bankruptcy No. 04–11106, Adversary No. 04–1067, 2007 WL 2713064 (Bankr. D. Vt. Sept. 17, 2007). As the court in *Kern* put it, a debtor who has "actual knowledge of his duties" under a collective bargaining agreement and yet fails "to make the requisite payments" commits "a material and knowing breach of his fiduciary duty[.]" *Kern*, 567 B.R. at 34–35 (citing *Mayo*, 2007 WL 2713064, at *11).

Applying that standard here, the Court finds that the Trustees have sufficiently stated a claim for defalcation. They allege that the Debtors' company was party to a collective bargaining agreement requiring the company to remit funds to the Benefit Plans. And they allege that the Debtors failed to satisfy their obligations under the collective bargaining agreement. At the October 9, 2025 hearing, Debtors' counsel appeared to concede that § 523(a)(4) defalcation requires no greater showing than that. (10/9/2025 Hearing, 12:23-24 p.m.) ("Fraud is a much more detailed, specific claim to allege . . . . The defalcation is simply the failure to turn over money that you should have. You don't have to show that you put it in your own pocket.").

23

To be sure, many questions of fact remain. The Trustees' complaint does not explain in detail the mechanics of the contribution requirements under the collective bargaining agreement. And the Settlement Agreement sheds only a little light on that subject, explaining that "the Collective Bargaining Agreement provides that contribution reports and payments [were] due no later than the 15th day of each month following the work month." (Ex. "1," p. 32). Nor do the Trustees allege in any detail whether the Debtors' failure to remit the funds was an innocent mistake, or even ordinary negligence. They instead allege, in conclusory fashion, that the Debtors "misappropriated" and "defalcated" the funds. But those questions of fact need not be resolved now, at the motion to dismiss stage, before discovery has taken place. Based on the allegations in the complaint, the Court finds that the Trustees have pled sufficient facts as to defalcation to survive the Debtors' Federal Rule 12(b)(6) defense.

E. Merger Clause

Finally, the Debtors argue in their Motion to Dismiss that the Trustees "previously availed themselves of the court system[] by obtaining a judgment by confession which made no reference to fraud," so they are "now bound by the limits of the prior judgment which did not render a judgment in favor of the plaintiffs for fraud or any facts establishing the elements of fraud." (Adv. Dckt. 14, p. 6). At the October 9, 2025 hearing, Debtors' counsel elaborated that the November 23, 2021

24

Settlement Agreement contained a "merger" clause stating that the Settlement Agreement "represents the entire agreement and understanding of the parties with respect to all matters contained in it, and all understandings and representations, whether written or oral, are and have been merged herein[.]" (Ex. "1," p. 37). Because the parties reduced the Trustees' claims against the Debtors to a settlement, the Debtors contend, the Trustees cannot now introduce evidence of the Debtors' alleged pre-settlement misconduct. (10/9/2025 Hearing, 12:28–12:36 p.m.).

That is wrong. Two Supreme Court cases govern this issue. First, in *Brown v. Felsen*, 442 U.S. 127 (1979), Brown guaranteed a loan made to Felsen's car dealership. The lender filed a state-court collection suit against Brown, Felsen, and the dealership. Brown filed a cross-claim against Felsen and the dealership, alleging that they fraudulently induced him to sign the guarantee. Eventually, the parties settled the case by stipulation, reflected in the state court's consent decree, giving Brown a judgment against Felsen and the dealership. The consent decree and stipulation made no mention of fraud. When Felsen failed to pay and instead filed for bankruptcy, Brown argued that the debt was nondischargeable because it arose from Felsen's fraud. The bankruptcy court granted summary judgment in favor of Felsen, finding the debt dischargeable, because the consent decree said nothing about fraud. The district court and the Tenth Circuit affirmed. But the Supreme Court reversed, holding that "the mere fact that a conscientious creditor has previously

25

reduced his claim to judgment should not bar further inquiry into the true nature of the debt." *Brown*, 442 U.S. at 138.

Second, *Archer v. Warner*, 538 U.S. 314 (2003), presented a nearly identical fact pattern. There, the Warners sold a manufacturing company to the Archers. The Archers later sued the Warners in state court for fraud in connection with the sale. They settled the lawsuit, and the settlement agreement said nothing about fraud. When the Warners failed to pay under the settlement, the Archers sued them in state court, and the Warners filed for bankruptcy. The Archers sought to have the debt declared nondischargeable based on fraud. The bankruptcy court found the debt dischargeable, and the district court and the Fourth Circuit affirmed, holding that the settlement agreement represented a "novation" replacing the original debt for fraud.

The Supreme Court reversed, rejection the Fourth Circuit's novation theory. Relying on *Brown v. Felsen*, the Supreme Court explained that "the only difference" between *Brown* and *Archer* was "the fact that the relevant debt [in Archer] [was] embodied in a settlement, not in a stipulation and consent judgment." *Archer*, 538 U.S. at 321. And that difference, the Supreme Court found, was meaningless: "[a] debt embodied in the settlement of a fraud case 'arises' no less 'out of' the underlying fraud than a debt embodied in a stipulation and consent decree." *Id.* The Supreme Court cited *Brown* for the proposition that Congress intended "the fullest possible inquiry" into dischargeability under § 523(a), and further intended "to allow

26

the relevant determination (whether a debt arises out of fraud) to take place in the bankruptcy court, not to force it to occur earlier in state court at a time when nondischargeability concerns 'are not directly in issue and neither party has a full incentive to litigate them.'" *Id.* (citing *Brown*, 442 U.S. at 134, 138).

So too here. That the Settlement Agreement made no reference to defalcation, or to any other misconduct on the Debtors' part, does not bar this Court from inquiring into the circumstances that led to that Settlement Agreement. It's true, as the Debtor argues, that a valid merger clause in an agreement under Pennsylvania law may prevent a plaintiff from bringing fraud claims pertaining to pre-settlement conduct by the defendant. *See, e.g., Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 497–98 (Pa. 2004) (discussing the parol evidence rule). But the Court rejects the Debtor's argument, for two reasons. First, the Debtor confines his argument to fraud and does not address the impact of a merger clause on a defalcation claim. (Adv. Dckt. 14, p. 6). Second, and more importantly, under *Archer*, a settlement agreement will not bar the court from inquiring into the true nature of the debt, so neither should a merger clause within that settlement agreement. "'[T]he true nature of the debt," rather than the formal mechanism imposing it, controls." *Yagi v. Hilgartner (In re Hilgartner)*, 91 F.4th 186, 190 (4th Cir. 2024) (quoting *Brown*, 442 U.S. at 138). The Court therefore rejects the Debtors' argument under the Settlement Agreement's merger clause.

27

## IV. Conclusion

Based on the allegations of fact in the complaint (and in the exhibits stipulated to be deemed part of the complaint), the Court finds that the Trustees have adequately pled the elements of defalcation in a fiduciary capacity under § 523(a)(4). For that reason, the Court will deny, by separate order, the Debtors' Motion to Dismiss under Federal Rule 12(b)(6).

Dated at Savannah, Georgia, this 11th day of March, 2026.

Edward J. Coleman, III, Judge
United States Bankruptcy Court
Southern District of Georgia

28